# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v().**                        **CRIMINAL NO. 1:13CR60-1**
                                              **(Judge Keeley)**

**EDITA MILAN, M.D.,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION [DKT. NO. 270], AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE

On July 14, 2014, the defendant, Dr. Edita Milan ("Milan"), filed a motion for authorization to expend funds for a forensic neurological evaluation. (Dkt. No. 189). The Honorable John S. Kaull, United States Magistrate Judge, acting under the authority of this Court's referral order and 28 U.S.C. § 636(b)(1)(A), denied Milan's motion. Milan then filed a motion for reconsideration pursuant to § 636(b)(1)(A), which vests the district judge with discretion to reconsider a magistrate judge's order "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." For the reasons that follow, the Court **GRANTS** Milan's motion for reconsideration, **AUTHORIZES** her counsel to obtain a forensic neurological evaluation, and **RECOMMITS** this matter to Judge Kaull to determine the amount necessary for an appropriate evaluation.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

**I.**

Through a second superseding indictment, the government has charged Milan with conspiracy to possess with intent to distribute and to distribute schedule II and III controlled substances, in violation of 21 U.S.C. §§ 841(a) and 846. Specifically, it contends that Milan, a pain management physician, conspired with her staff and others to distribute hydrocodone, buprenorphine, and other prescription drugs without a legitimate medical purpose.

In her original motion for authorization to expend funds, Milan argued that "a forensic neurological evaluation to determine whether or not [she] suffers from age related dementia or any progressive disease which may impair cognitive function is necessary for [her] to have a constitutionally adequate defense at both the guilt and sentencing phases." (Dkt. No. 189 at 3). At an ex parte hearing before Judge Kaull, Milan argued that "such information, if found through the evaluation, may be admissible if relevant and helpful to the jury in deciding whether [she] had the specific intent required by the crimes," and that it "may be considered by the court at sentencing." (Dkt. No. 204 at 3) (internal quotation marks omitted). As grounds for the evaluation, Milan proffered her age (during the time of the alleged offense,

2

USA v. MILAN                                                    1:13CR60-1

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

she was in her early seventies), her susceptibility to a scam through which she lost $30,000, and observations by her medical experts that her mental capacity should be evaluated.

## II.

In his order denying the motion, Judge Kaull determined that "a request for funding for a forensic neuropsychological evaluation of Milan for use at sentencing is premature." (Dkt. No. 204 at 4). Accordingly, Judge Kaull denied the motion without prejudice insofar as it sought the evaluation for use at sentencing. That decision was neither clearly erroneous nor contrary to law, and will not be reconsidered. Thus, the determination of whether a neurological evaluation would be relevant must be made only as it relates to the trial of this case.

In addressing this issue, Judge Kaull looked to the Fourth Circuit's unpublished decision in United States v. Hood, in which the court explained that "the Comprehensive Crime Control Act of 1984 has 'abolished diminished capacity as a defense.'" 857 F.2d 1469, at *1 (4th Cir. 1988) (quoting United States v. White, 766 F.2d 22, 25 (1st Cir. 1985)). He also noted a pair of district court cases that have relied on Hood. See No. AW-10-0760, 2011 WL 5826675, at *7 (D. Md. Nov. 17, 2011); and McShan v. United States,

3

**USA v. MILAN** 1:13CR60-1

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

No. 3:03CV0324, 2006 WL 3192532, at *2 (S.D.W. Va. Nov. 1, 2006). Based on these cases, and on Milan's explanation as to why she needs the evaluation, Judge Kaull concluded that the results of such an evaluation would bear only on a defense of justification or excuse, rather than a lack of criminal intent at the time of the alleged offense. He therefore denied the motion.

Milan now argues that Judge Kaull erred in his determination that the results of any neurological evaluation would not be relevant to her criminal intent. In particular, she urges that such evidence would be relevant "for the purpose of rebutting the government's evidence of specific intent and as a complete defense to the charge of conspiracy." (Dkt. No. 270 at 2).

**III.**

**A.**

Under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(e)(1) (the "CJA"), counsel for an indigent client may request "investigative, expert, or other services necessary for adequate representation." If the Court finds the services to be "necessary," it "shall authorize counsel to obtain the services." Id.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

Courts have interpreted § 3006A(e)(1) to mean that the requested services should be authorized "in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them." United States v. Armstrong, 621 F.2d 951, 956 (9th Cir. 1980) (internal quotation marks and citation omitted).  That said, "a rich defendant may have the right to waste his money on unnecessary and foolish trial steps, but that does not, in the name of necessary constitutional equality, give the indigent the right to squander government funds merely for the asking." Slawek v. United States, 413 F.2d 957, 960 (8th Cir. 1969).  In any event, an indigent defendant is entitled to expert services only on "issues relevant to the defense." Ake v. Oklahoma, 470 U.S. 68, 82 (1985).

**B.**

Milan is charged with conspiracy to possess with intent to distribute controlled substances.  Under the Drug Abuse Prevention and Control Act of 1970, "it shall be unlawful for any person knowingly or intentionally to . . . possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1).  Moreover, "[a]ny person who attempts or conspires to commit" a violation of § 841(a)(1) is subject to the

**USA v. MILAN**                                                  **1:13CR60-1**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

same penalties as one who completes such a violation. 21 U.S.C. § 846. Nevertheless, "[d]istribution and conspiracy remain separate offenses." United States v. Hackley, 662 F.3d 671, 681 (4th Cir. 2011).

"To prove a drug conspiracy, the Government must prove the following: '(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators.'" United States v. Stewart, 256 F.3d 231, 250 (4th Cir. 2001) (quoting United States v. Heckard, 238 F.3d 1222, 1229 (10th Cir. 2001)). In the Fourth Circuit, "the mens rea of § 846 is derived from that of the underlying offense, in this case § 841(a)." United States v. Ali, 735 F.3d 176, 186 (4th Cir. 2013) (citing United States v. Deffenbaugh, 709 F.3d 266, 272 (4th Cir. 2013)). "The mens rea of § 841(a) . . . requires specific intent to distribute a controlled substance or to possess with intent to distribute a controlled substance." Id. (emphasis added). Therefore, in this case, the government must prove specific intent as an element of the alleged conspiracy.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

**C.**

If Milan is authorized for an evaluation, and its results demonstrate a mental impairment, she intends to present them as evidence of "diminished capacity." Diminished capacity is an ambiguous phrase in the law. See Clark v. Arizona, 548 U.S. 735, 772 n.41 (2006). While some courts have recognized diminished capacity as an affirmative defense, see, e.g., McShan, 2006 WL 3192532, at *2, others have concluded that it is "not an affirmative defense at all, but rather a defense theory that challenges the government's ability to prove a necessary element - specifically, the mens rea element - of the offense." United States v. Lawson, 459 F. Supp. 2d 1192, 1195 (M.D. Ala. 2006) (emphasis in original).

In 2002, the Fourth Circuit determined that the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17 (the "IDRA"), abolished diminished capacity as an affirmative defense. United States v. Worrell, 313 F.3d 867, 872 (4th Cir. 2002) (citing United States v. Cameron, 907 F.2d 1051, 1061 (11th Cir. 1990)). Nevertheless, it held that "[the] IDRA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered

**USA v. MILAN**                                                      **1:13CR60-1**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION,
AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

purely to rebut the government's evidence of specific intent." Id. at 874.

The court cautioned that "such cases will be rare" and that "we have difficulty envisioning many scenarios in which a defendant could introduce psychiatric evidence, short of insanity, that was not simply diminished capacity evidence or some other form of justification in disguise." Id. at 873-74. Notwithstanding, it cited an example of psychological evidence used to negate specific intent from the Seventh Circuit's decision in United States v. Staggs, 553 F.2d 1073 (7th Cir. 1977), overruling recognized by United States v. Ricketts, 146 F.3d 492, 497 (7th Cir. 1998).

In Staggs, the defendant was charged with assaulting a federal officer with a deadly weapon, which the Seventh Circuit determined to be a specific intent crime. 553 F.2d at 1076. In preparation for trial, a psychologist examined the defendant. Id. at 1075. During the trial, the psychologist offered to testify that the defendant "was more likely to hurt himself than to direct his aggressions toward others." Id. The district court excluded the testimony after determining that it was not relevant to the issues. Id. In reversing that decision, the Seventh Circuit explained that "Dr. Sloan's testimony . . . made more probable the truth of

USA v. MILAN                                                    1:13CR60-1

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION, AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

defendant's assertion that he harbored no criminal intent during his encounter with [the federal officer]." Id. at 1076.

**D.**

Here, the law would permit Milan to use the results of a forensic neurological evaluation to negate the specific intent element of the alleged conspiracy, but only if those results were relevant to her specific intent as opposed to an affirmative defense. Since no evaluation has been performed, the Court does not have the results on which to base that determination. Thus, the issue shifts to focus on the likelihood that a forensic neurological evaluation would produce results relevant to Milan's specific intent. Although there is no clearly articulated threshold for the defendant to meet in this regard, necessity under § 3006A(e)(1) is made out where "a reasonable attorney would engage such services for a client having the independent means to pay for them." United States v. Burroughs, 613 F.3d 233, 239 (D.C. Cir. 2010) (internal quotation marks and citation omitted).

Milan was in her seventies during the time of the alleged conspiracy. She previously had been the victim of a scam that defrauded her of $30,000. Moreover, at least two physicians have expressed concerns about her mental capacity and suggested that she

**USA v. MILAN**                                                    **1:13CR60-1**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
RECONSIDERATION, AUTHORIZING FORENSIC NEUROLOGICAL EVALUATION,
AND RECOMMITTING MATTER TO MAGISTRATE JUDGE**

be evaluated. If Milan's attorney were retained, based on the facts proffered, such counsel likely would engage a forensic neurological evaluation to determine whether Milan was capable of forming specific intent. Therefore, the Court finds the expert services sought to be reasonably necessary.

**IV.**

For the reasons discussed, the Court **GRANTS** Milan's motion for reconsideration, **AUTHORIZES** counsel for Milan to obtain a forensic neurological evaluation, and **RECOMMITS** this matter to Judge Kaull to determine the amount necessary for an appropriate evaluation.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: November 24, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
